```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division

SCOTT R. SHARER, et. al.       )
                               )
        Plaintiffs,             )
                               )
     v.                        )      1:06cv626(JCC)
                               )
TANDBERG, INC.,                )
                               )
                               )
        Defendant.              )
```

## **M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Defendant's motions for class decertification and summary judgment. For the following reasons, the Court will grant Defendant's motion to decertify class and deny Defendant's motion for summary judgment.

### **I.   Background**

Plaintiffs Scott R. Sharer ("Sharer"), Brandon Law ("Law"), and potential opt-ins either have been or currently are salaried employees of Defendant Tandberg, Inc. ("Tandberg"). Plaintiffs have brought this action alleging that each of them has been aggrieved by Defendant's policy for partial-day pay docking. The facts as alleged by Plaintiffs are as follows: In January 2006, Tandberg implemented a new payroll system to track employee time. Under this system, salaried employees of Tandberg classified as "exempt" are required to submit time sheets noting the hours worked in a given day, and are required to work a minimum of eight hours per week day. However, salaried

employees of Tandberg are instructed not to report hours worked on holidays, weekends, or on weekdays in excess eight hours, even if work is conducted.  If a salaried employee works less than eight hours in a day, that employee is required to report the actual number of hours worked and count the hours missed as vacation or sick time.  If no vacation or sick time is available, then the employee's pay is docked.  Employees are not allowed to make up time by working extra hours or weekends, and pay is still docked even if the given employee worked more than forty total hours in the week.

      Plaintiffs Sharer and Law were both salaried employees of Tandberg who worked, on average, over forty hours per week.  Sharer was employed as training manager and team leader from May 2003 until resigning on February 24, 2006.  While employed at Tandberg, Sharer worked primarily out of his home in Georgia and was paid an annual salary of $100,000.  Sharer was classified as an "exempt" employee for compensation purposes, but during his tenure, he received his full salary amount for each period worked, and his pay was never docked.

      Law was hired by Nuvision, a company later acquired by Tandberg in February 2002, and worked for Tandberg until resigning on May 12, 2006.  Law was employed as a technical trainer and instructor and paid an annual salary of $56,651.  Law was also classified as "exempt" but received his full salary for

each pay period worked without any deductions made for partial days worked.

Law and Sharer filed this suit against Tandberg on May 30, 2006 on behalf of themselves and others similarly situated, under Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"). Sharer and Law claim unpaid overtime wages and lost wages due to Tandberg's alleged partial-day docking system. On October 17, 2006 this Court authorized the notification of potential collective action members who have been adversely affected by the actions of Tandberg. Since that time, eight additional plaintiffs ("Opt-ins") have opted into the law suit, but six have voluntarily dismissed their claims. Peter Petropoulos ("Petropoulos") and Bonita Spriggs ("Spriggs") are the remaining two Opt-ins. Petropoulos was employed by Tandberg as a technical support engineer and project manager from September 28, 1998 until termination on June 30, 2004. Spriggs was employed by Tandberg as an order processing specialist from November 13, 2002 until resigning January 4, 2005. Neither employee claims that his pay was ever docked for partial days worked, but each claims instead to have been subjected to a partial-day docking policy.

On November 24, 2006, Defendant Tandberg moved this Court for summary judgment. On December 20, 2006 this Court entered an order staying consideration of summary judgment until the end of discovery. Plaintiff then filed a motion for leave to

amend its Complaint on December 22, 2006, in order to add FLSA misclassification to the original Complaint.  On January 12, 2007, Magistrate Judge O'Grady denied Plaintiff's motion for leave to amend on the grounds that adding a new misclassification theory to the Complaint, after the close of discovery (which had already been extended by over two months) was an undue delay.  On February 2, 2006 this Court affirmed Judge O'Grady's Order on appeal.  On February 9, 2007 Defendant filed an amended motion for summary judgment and a motion to decertify conditional class of alleged similarly situated employees, pursuant to 29 U.S.C. § 216(b).  These motions are currently before the Court.

## II.  Defendant's Motion for Class Decertification

Pursuant to 29 U.S.C. § 216(b), an action may be maintained against any employer by any class of similarly situated employees.  The FSLA does not define the term "similarly situated," and the Fourth Circuit has not had an opportunity to define the term.  However, several district courts addressing the issue have explicitly adopted or implicitly recognized a two-step approach. *See, e.g., Thiessen v. General Elec. Capital Corp.,* 996 F. Supp. 1071, 1080 (D. Kan. 1998); *Morisky v. Public Service Elec. and Gas Co.,* 111 F. Supp. 2d 493, 497 (D. N.J. 2000); *Brooks v. BellSouth Telecommunications, Inc.,* 164 F.R.D. 561, 567 (N.D. Ala. 1995).

Under this approach, the court first makes a

determination at the "notice stage," *i.e.,* the point at which the court determines whether notice of the action should be given to potential class members. *Morisky,* 111 F. Supp. 2d at 497. This determination is made using a lenient standard, and typically results in "conditional certification of a representative class." *Id.* (quoting *Brooks v. Bellsouth Telecommunications, Inc.,* 164 F.R.D. 561, 568 (N.D. Ala. 1995)). At this stage, Plaintiffs are required only to make a preliminary showing based on "at least a colorable basis for their claim that a class of similarly situated plaintiffs exist." *D'Anna v. M/A-COM Inc.,* 903 F. Supp. 889, 894 (D. Md. 1995).

In the next step of this approach, the court "makes a second determination after discovery is largely complete and the case is ready for trial." *Thiessen,* 996 F. Supp. at 1080. In its analysis of the similarly situated question at this stage, the court has much more information on which to base its decision and, as a result, now employs a stricter standard. *Id.* If the court finds the plaintiffs are similarly situation, the case is allowed to proceed to trial as a collective action. *Morisky,* 111 F. Supp. 2d at 497. A group of plaintiffs are similarly situated when they together were victims of a common policy, scheme or plan that violated the law. *See, e.g., Marroquin v. Canales,* 236 F.R.D. 257, 260 (D. Md. 2006). District courts have typically applied three factors to aid in this determination: (1) the

disparate factual and employment settings of the individual plaintiffs; (2) defenses which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Moss v. Crawford & Co.,* 201 F.R.D. 398, 409 (W.D. Pa. 2000)(quoting *Theissen,* 996 F. Supp. at 1080).

Plaintiffs claim that a similarly situated class exists because named Plaintiffs and Opt-ins were all Tandberg employees who were "misclassified and subjected to an illegal partial day docking policy." (Pltf.'s Opp. to Summ. J. at 9). While Plaintiffs continue to raise FLSA misclassification as an issue throughout its briefing, Plaintiffs' request to add a misclassification theory to its Complaint was denied on January 12, 2007 and that denial was affirmed by this Court on February 2, 2007. Accordingly, the Court will focus on whether the Plaintiffs are similarly situated with regard to the allegations of a partial day docking policy and not misclassification, which is not at issue.

The Opt-in Plaintiffs were situated differently than Plaintiffs Sharer and Law with respect to the alleged partial-day docking claims. Both Petropoulos and Spriggs left employment at Tandberg over one year prior to the implementation of the system at issue, and were thus never subjected to the alleged policy

that is the basis of Plaintiffs' Complaint.[1]  Furthermore, Plaintiffs have provided no evidence that suggests a partial-day docking system existed prior to that time.  The evidence supporting the existence of a partial-day docking policy also relates directly to the January 2006 implementation.[2]  The Opt-Ins in this case were also situated differently with respect to job titles and responsibilities.  While the named Plaintiffs were teachers in the "Tandberg University," Petropoulos was a project manager, and Spriggs a sales specialist.  Accordingly, this Court finds that the Opt-ins and Plaintiffs are not similarly situated with respect to Plaintiffs' claim for partial day docking, and will grant Defendant's motion for class decertification.

### III.  Defendant's Motion for Summary Judgment

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications &*

---

[1] Plaintiffs' Complaint specifically states that "*because of the payroll system implemented in January of 2006*, Plaintiffs' pay is or was subject to reduction for absences of less than a day, known as partial-day docking." (Compl. at ¶21)(emphasis added). It is thus clear that Plaintiffs' Complaint relates to the computerized payroll system implemented in January of 2006 and not to a system in place prior to that time.

[2] This Court has determined that the email exchange between Robert Ricci, Frank Kent and Plaintiff Law creates at minimum a dispute of material fact sufficient to defeat summary judgment.  *See infra,* Part III.

*Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996)(citations omitted). In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs.*, 933 F.2d 1253, 1259 (4th Cir. 1991)(citations omitted).

The very existence of a scintilla of evidence or of unsubstantiated conclusory allegations, however, is insufficient to avoid summary judgment. *Anderson*, 477 U.S. at 248-52. Rather, the Court must determine whether the record as a whole could lead a reasonable trier of fact to find for the non-movant. *Id.* at 248.

   A) Exempt Status

The Fair Labor Standards Act ("FLSA") exempts "any employee employed in a bona fide executive, administrative, or professional capacity" from its overtime provisions. 29 U.S.C. § 207(a)(1). To establish exempt status, an employer must demonstrate that the employee meets both a salary and a duties test. 29 C.F.R. §§ 541.100-541.400. The employer bears the burden of persuasion to establish that an exemption exists. *Clark v. J.M. Benson Co.,* 789 F.2d 282, 286 (4th Cir. 1986). Plaintiff's complaint alleges that they cannot be considered exempt employees because they were not paid on a salaried basis.

(Compl. at ¶21). As stated above, Plaintiffs' motion for leave to amend this Complaint in order to include a claim for FLSA misclassification was denied on January 12, 2007, and that decision was affirmed by this Court on February 2, 2007. Accordingly, this Court will not address Plaintiffs' arguments regarding proper classification under the "duties test" to the extent that they relate to precluded claims for FLSA misclassification. Instead, the Court will focus on whether Tandberg's payroll policy implemented in January of 2006 subjected Plaintiffs to a "partial day docking" policy, thereby destroying their status as "exempt" employees and entitling them to overtime pay. Finally, as noted above, this Court has granted Defendant's motion for decertification. Thus, this Court will only address Defendant's motion for summary judgment as it pertains to Plaintiffs Sharer and Law.

    B) The *Auer* Standard

An employee is paid on a salary basis if he regularly receives a predetermined amount constituting all or part of his compensation for each pay period, and that amount is not subject to reduction due to variations in the quantity or quality of work performed. 29 C.F.R. § 541.602(a). Salary deductions are allowed for absences of a day or more for personal reasons or for sickness and disability if made in accordance with a bona fide plan. 29 C.F.R. § 541.602(b). The exemption can be lost if the

employer makes improper deduction from an exempt employees salary "if the facts demonstrate that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603(a). However, improper deductions that are either isolated or inadvertent will not result in loss of exemption if reimbursement is made. 29 C.F.R. § 541.603(c). The Supreme Court has established that exempt status may not be defeated by a "mere possibility of improper deduction" in pay, but instead requires "either actual practice of making such deductions or employment policy that created significant likelihood of such deductions." *Auer v. Robbins*, 519 U.S. 452, 460 (1997). The Court further held that a significant likelihood of deduction exists when an employer has a "clear and particularized policy, which effectively communicates that deductions will be made in specific circumstances." *Id.* at 461; *see also Karson v. American College of Cariology,* 198 F.3d 237, 1999 WL 827547 at *3 (4th Cir. 1999); *Yuen v. U.S. Asia Commercial Development Corp.,* 974 F. Supp. 515, 525 (E.D. Va. 1997). Excluded from this definition were a "one-time incidents," in which improper deductions are taken under unique circumstances. *Auer,* 519 U.S. at 460.

In this case, none of the Plaintiffs claim that actual partial-day docking ever occurred. Plaintiffs' Complaint hinges entirely upon the allegation that the timekeeping system implemented in January of 2006 subjected them to a clear and

effective policy by which there was a significant likelihood that deductions would occur. Plaintiffs argue that this alleged policy was effectively communicated in a string of emails between Tandberg executives and Law,[3] and that this email exchange shows that a clear and particularized partial-day docking policy exists. Defendants argue that despite this email exchange, no question of material fact remains in dispute. In support of this position, Defendant has provided numerous evidentiary exhibits, including an employee handbook directly stating that Tandberg employs no such policy, (Def.'s Mot. for Summ. J. Ex. A and B), emails from Robert Ricci to Tandberg staff explaining that "the system is not intended to track how many hours people are working, unless you are non-exempt (hourly)." (Def.'s Mot. for Summ. J. Ex. A); and an email dated December 29, 2005 to both Plaintiffs stating that Tandberg would "work to make sure that you don't suffer the consequences of not getting paid," if a timesheet was not promptly entered. (Def.'s Mot. for Summ. J. Ex. N). Finally, Defendants have provided evidence that the ADP timekeeping system at issue contains an "autopay" feature, which assures salaried employees are paid for their usual 86.667 hours

---

[3] In that string of emails, Plaintiff Law inquired of Robert Ricci "if I am a salaried employee [sic] why would I have to take LWOP [leave with out pay]?" to which Ricci provided a qualified answer that while such decisions were not up to him "if it were me, I would say if you don't work, and you don't charge paid time off (such as sick or vacation) you would not get paid." Ricci referred the email to Frank Kent of Human Resources, who replied that "Bob is correct. Leave has to be categorized-sick, vacation, bereavement, personal days, etc. When there is no category of use, then it is not paid." (Pltf.'s Opp. to Summ. J. Ex. 4).

per pay period unless the system is overridden. (Def.'s Mot. for Summ. J. Ex. A). Defendants argue that despite the email exchange offered by Plaintiff, evidence against a partial-day docking policy is strong enough that no question of material fact remains in dispute that could lead a reasonable juror to rule for the Plaintiffs.

This Court disagrees with Defendant's assertion. Examining a similar issue, the Fourth Circuit has held that in such an instance a question of material fact remains for the jury to determine if a partial-day docking system was in place. *See Shockley v. City of Newport News,* 997 F.2d 18, 22-23 (4th Cir. 1993)(reversing a lower court's finding of summary judgment when contrary evidence created, at minimum, a question of fact for the jury).[4] In this case, like *Shockley*, factual evidence exists supporting both parties' positions, and there is nothing more material to the resolution of this case than the existence of a partial-day docking policy. At this stage in the proceeding, the Court is not in a position to act as a trier of fact. Accordingly, a dispute of material fact remains for the jury.

Finally, this Court is not persuaded by Defendant's argument in the alternative that the string of emails presents only an isolated or inadvertent incident and is thereby excepted

---

[4] While *Shockley* involved a summary judgment ruling for the plaintiff and predated the Supreme Court's ruling in *Auer,* it has not been overruled.

under *Auer* and the FLSA. *See Auer,* 519 U.S. at 460 ("a one-time incident in which a disciplinary deduction is taken under unusual circumstances does not defeat the salaried status of employees"); *see also* 29 C.F.R. § 541.603(c). The fact that only one communication suggests this policy exists does not render it an isolated incident. The isolated incident envisioned by *Auer* pertains to single instances of partial-day docking when no underlying policy exists. *See, e.g., Danesh v. Rite Aid Corp.,* 39 F. Supp. 2d 7, 11-12 (D.C. Cir. 1999); *Carpenter v. City & County of Denver, Colorado,* 115 F.3d 765, 767 (10th Cir. 1997). Such is clearly not the issue in this case, as the evidence provided by Plaintiff does not suggest a one-time incident in which an employee's pay was partially docked, but instead suggests an existing policy, articulated in a single communication. Accordingly, and for the reasons stated above, Defendant's motion for summary judgment will be denied.

### III. Conclusion

For the foregoing reasons, Defendant's motion to deny certification of the class will be granted, and Defendant's motion for summary judgment will be granted. An appropriate Order will issue.

February 27, 2007                    _____/s/_____
Alexandria, Virginia                       James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE