IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| SCOTT R. SHARER, *et al.* )<br>)<br>      Plaintiffs, )<br>)<br>    v. )<br>)<br>TANDBERG, INC., )<br>)<br>)<br>      Defendant. ) | 1:06cv626(JCC) |

## **M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Plaintiffs' motions in limine.

### I.  Background

Plaintiffs Scott R. Sharer ("Sharer") and Brandon Law ("Law") are former salaried employees of Defendant Tandberg, Inc. ("Tandberg"). Plaintiffs have brought this action under Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), and claim unpaid overtime wages. On February 9, 2007 Defendant filed an amended motion for summary judgment and a motion to decertify conditional class of alleged similarly situated employees, pursuant to 29 U.S.C. § 216(b). On February 27, 2007, this Court denied Defendant's motion for summary judgment but granted Defendant's motion for decertification, thereby dismissing the remaining Opt-In Plaintiffs.[1] On March 16, 2007, Plaintiff filed

---

[1] Eight additional Plaintiffs opted-in to this case, but six voluntarily withdrew their claims. This Court dismissed the remaining two Opt-ins Peter Petropoulos and Bonita Spriggs on February 27, 2007.

the following motions in limine: (1) motion to exclude reference to Plaintiff Law's assertion of the attorney-client privilege; (2) motion to exclude the testimony and expert report of William J. Carrington; (3) motion to exclude evidence pertaining to the Opt-ins and Opt-in process; (4) motion to exclude emails between Law, Casey Rosetti, and Terri Orr; and (5) motion to exclude Plaintiffs' emails and other employment documents.  Defendant consented to Plaintiffs' motion to exculde emails between Law, Rosetti, and Orr.  The remaining motions are currently before the Court.

## II. Analysis

A) <u>Plaintiffs' Motion to Exclude Reference to Law's Assertion of the Attorney-Client Privilege</u>

The core facts at issue in this matter are the emails between Law and Tandberg representatives Smith, Ricci and Kent regarding Tandberg's policy for partial-day absences.  This set of communications will be a central issue at trial.  During the Law deposition, Tandberg's counsel inquired as to whether the emails were his own idea or if "someone ask[ed] him to write this [email]," to which Law declined to answer based on the attorney-client privilege.  Plaintiffs anticipate that Defendant will attempt to raise an inference at trial that Law may have consulted with legal counsel concerning the April 2006 emails, and move to exclude such negative inferences regarding Law's assertion of the attorney-client privilege.

It is well established that when a party "consulted an attorney for the purpose of securing a legal opinion or services and in connection with that consultation communicated information intended to be kept confidential," such communications are protected by the attorney-client privilege. *See Upjohn Co. v. United States,* 449 U.S. 383, 395 (1981). The attorney client privilege "protects only the communications themselves, not underlying facts." *X-Corp. v. Doe*, 805 F. Supp. 1298, 1305 (E.D. Va. 1992)(citing *Upjohn Co. v. United States,* 449 U.S. 383, 395 (1981)). The mere fact of legal consultation also falls outside the protection of the privilege. *See, e.g., In Re Grand Jury Investigation No. 83-2-35,* 723 F.2d 447 (6th Cir. 1983); *Howell v. Jones,* 516 F.2d 53, 58 (5th Cir. 1975).

It is clear that the substance of any communications between Law and his attorney are protected by the attorney-client privilege, while the fact that he met with an attorney-which he has openly admitted during the course of this litigation is not.[2] Thus, Plaintiffs do not seek to protect the fact of legal consultation under the guise of the attorney-client privilege, but instead seek to protect against a negative inference about the substantive information sought during such consultations-namely whether Law was advised by counsel in

---

[2] Plaintiffs concede that Law spoke to an attorney prior to the April 2006 emails, and have admitted such in their answers to Defendant's interrogatories.

writing the emails to Tandberg.  The issue for this Court to resolve is whether an inference regarding assertion of the privilege intrudes upon that privilege or is irrelevant under Rule 402 of the Federal Rules of Evidence.

The Fourth Circuit examined the issue of whether a negative inference may be drawn by invocation of the attorney-client privilege in *Parker v. Prudential Ins. Co. of America,* 900 F.2d 772 (4th Cir. 1990).  In that case, the Fourth Circuit held that "a client asserting the privilege should not face a negative inference about the substance of the information sought."  *Id.* at 775.  The Court's decision was based upon the finding that the testimony was only probative if one infers that the attorney advised the client to act as she did.[3]

The fact that Law met with an attorney prior to the email exchange with Smith, Ricci, and Kent is only relevant to the extent that an inference may be drawn as to the substance of legal communications between attorney and client.  As the Fourth Circuit held in *Parker,* "any such inference would intrude upon the protected realm of the attorney-client privilege." *Id.* Accordingly, Defendant may not refer to Plaintiff's legal consultation prior to the April emails to draw an inference about

---

[3] *Parker* presented a different factual scenario than the instant action, in that the client's former attorney was called to testify and the Court limited the testimony to non-privileged facts.  Nevertheless, each case involves potential inferences that may be drawn based upon non-privilege facts coupled with the fact of legal consultation.

the substance of legal advice.  In concordance with the Fourth Circuit precedent established in *Parker,* because the fact of legal consultation is only relevant in order to draw this improper inference, the danger of unfair prejudice to the Plaintiff greatly outweighs any probative value under Rule 403 of the Federal Rules of Evidence.  Accordingly, this Court sees no reason to allow Defendants to question Law regarding his consultations with counsel prior to the sending of the emails.

    B) <u>Motion to Exclude Expert Report and Testimony of William J. Carrington</u>

Plaintiffs next move to exclude the testimony and report of expert witness William J. Carrington, PhD ("Carrington"), on the grounds that Dr. Carrington is not qualified as a medical expert, and his report is inadmissible hearsay, unfairly prejudicial, and impermissible character evidence.  For the following reasons, Plaintiffs' motion will be granted in part.

    1) <u>Rule 702 Standard of Review</u>

Rule 702 of the Federal Rules of Evidence, which was amended effective December 1, 2000, to reflect the Supreme Court's rulings in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999), provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact

> in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Pursuant to their role as gatekeepers, district court judges must act to "ensure that any and all scientific testimony...is not only relevant, but reliable." *Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194, 199 (4th Cir. 2001) (quoting *Daubert,* 509 U.S. at 588). Accordingly, "a trial judge, faced with a proffer of expert scientific testimony, must conduct 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Id.* (quoting *Daubert,* 509 U.S. at 592-93).

As a preliminary matter, a district judge, in making this assessment, should examine the following list of factors:

> (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Id.* (citing *Daubert,* 509 U.S. at 592-94). This list, however, is "neither definitive [ ] nor exhaustive." *Id.* Rather, the

factors listed "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 200. The primary goal of this inquiry is to ensure that the proffered testimony is reliable, in the sense that it is based on scientific knowledge, and relevant, in the sense that it will be of assistance to the fact-finder. *United States v. Barnette,* 211 F.3d 803, 815 (4th Cir. 2000). Stated differently, the gatekeeping role is meant "to ensure that the expert witness in question in the courtroom employs the same level of intellectual vigor that characterizes the practice of an expert in the relevant field." *Id.* at 815-16 (citing *Kumho Tire Co.,* 526 U.S. at 152).

Expert testimony, in order to be reliable, "must be based on scientific, technical, or other specialized *knowledge* and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. General Motors Corp.,* 190 F.3d 244, 250 (4th Cir. 1999) (citing *Daubert,* 509 U.S. at 590, 592-93) (emphasis in original). "Reliability of specialized knowledge and methods for applying it to various circumstances may be indicated by testing, peer review, evaluation of rates of error, and general acceptability." *Id.* (citing *Daubert,* 509 U.S. at 593-94). At the end of the day, however, a district court's decision with respect to the

admissibility of expert scientific testimony "is always a flexible one, and the court's conclusions necessarily amount to an exercise of broad discretion guided by the overarching criteria of relevance and reliability." *Id.; see also Cooper,* 259 F.3d at 200 (noting the Supreme Court's statement in *Kumho Tire* that trial judges "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"); *Barnette,* 211 F.3d at 816 (noting the Fourth Circuit's consistent practice of giving "great deference" to a trial court's *Daubert* ruling).

    2) <u>Plaintiff's Memory</u>

Plaintiffs first move to strike the expert report and testimony of William Carrington on the grounds that, while he is a qualified expert in the field of economics, his report is an attempt to introduce medical evidence, to which he is not qualified. Upon a review of Dr. Carrington's credentials and his expert report, the Court will grant Plaintiffs' motion to the extent that Dr. Carrington's report or testimony concern Plaintiffs' memories. *See* Carrington Report ¶¶ 8-10, 14-15. First, it is well established that a testifying expert must be qualified by knowledge, skill, experience, training or education. *Kopf v. Skyrm,* 993 F.2d 374, 377 (4th Cir. 1993). While a qualified expert in the fields of economics and statistics, nothing in Dr. Carrington's credentials indicates knowledge,

-8-

skill, experience, training, or education in the field of memory sciences.  Second, Dr. Carrington's reliance upon unidentified "academic literature" offers the Court no way to test reliability of the knowledge and methods or determine the level of testing, peer review, evaluation of rates of error, and general acceptability.  Furthermore, specialized testimony explaining memory is typically improper, as the average person is able to understand that people forget.  *See United States v. Affleck,* 776 F.2d 1451, 1458 (10th Cir. 1985).  Thus, a faulty memory is better served as a matter for cross-examination.  *Id.*

For the reasons stated above, this Court concludes that Dr. Carrington is not qualified to speak as an expert regarding memory or memory science.  Accordingly, Plaintiffs' motion will be granted to the extent that it seeks to exclude expert opinion on memory.  The Court will limit the admissibility of Dr. Carrington's testimony to areas of economic expertise, and exclude all references to Plaintiffs' memory.  Additionally, the Carrington Report will be admissible only to the extent that it involves statistical analyses related to timekeeping accuracy and average hours worked.  *See* Carrington Rep. at ¶¶ 3-5.

C) <u>Additional Motions in Limine</u>

The Court will not reach the merits of Plaintiffs' two additional motions.  Plaintiffs move this Court to exclude any reference to the Opt-Ins or Opt-In process as irrelevant and

unfairly prejudicial.[4]  Defendant agrees that evidence pertaining to the Opt-Ins is likely irrelevant and has not expressed an intent to use it at trial.  However, Plaintiffs have not identified any specific evidence that they wish to exclude.  Accordingly, this Court will reserve judgment until specific evidence is at issue, rather than issuing a blanket Order excluding any possible reference to the Opt-Ins.  The Court will then be in a better position to weigh relevance as well as to balance the probative value against the risk of unfair prejudice when such evidence is identified and presented.

       Plaintiffs also seek to exclude thirty-five separate exhibits including Sharer and Law's employment documents and emails between Sharer and Law evidencing complaints about Tandberg and their co-workers.  Plaintiffs anticipate that this evidence will be used to show that Sharer and Law were disgruntled employees who "set up" Tandberg by asking it to articulate its policy for partial-day docking, and argue that it is irrelevant, unfairly prejudicial, and improper character evidence.  Again, this Court will reserve judgment until specific evidence is at issue, rather than issuing a blanket Order excluding all evidence from a broad category.  The Court will be in a better position to weigh relevance as well as to balance the

---

[4]Although eight Opt-Ins initially joined this matter, six voluntarily dismissed their claims.  In the March 16, 2007 Order, this Court dismissed the remaining two Opt-Ins Petropoulos and Spriggs, leaving only the claims of named Plaintiffs Law and Sharer.

probative value against the risk of unfair prejudice when such evidence is identified and presented.  Accordingly, the Court will decline judgment on Plaintiffs' remaining motions at this time.

### III.  Conclusion

For the foregoing reasons, Plaintiffs' motion to exclude reference to Law's assertion of the attorney-client privilege will be granted; Plaintiffs' motion to exclude the testimony and report of William Carrington will be granted in part; and Plaintiffs' motion to exclude emails between Law, Casey, Rosetti, and Orr will be granted due to Defendant's consent.  Finally, the Court will reserve judgment on Plaintiffs' motions to exclude emails and other employment documents and to exclude reference to the Opt-Ins.  An appropriate Order will issue.

March 27, 2007                       _____/s/_____
Alexandria, Virginia                        James C. Cacheris
                             UNITED STATES DISTRICT COURT JUDGE